WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, APPELLEE, v. O. M. OLSEN, COMMISSIONER OF NEBRASKA STATE DEPARTMENT OF LABOR, APPELLANT.

4 N. W. (2d) 923

FILED JULY 17, 1942. No. 31356.

*John E. Sidner* and *Ray W. McNamara*, for appellant.

*Rainey T. Wells, J. M. Sturdevant, George Yeager, John F. Futcher* and *Albert F. Wahl, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

ROSE, J.

This is a proceeding under the unemployment compensa-

tion law. Comp. St. Supp. 1939, secs. 48-701, 48-724. Grace Radloff was employee and claimant for unemployment benefits. Woodmen of the World Life Insurance Society was employer and its plea was disqualification of employee as claimant for benefits. The deputy commissioner and the appeal tribunal allowed the claim. The employer appealed from the decision of the appeal tribunal to the district court for Douglas county where the claim was disallowed. O. M. Olsen, commissioner of the Nebraska state department of labor, appealed to the supreme court. A motion to dismiss the appeal, on the ground that the commissioner was not a party having an appealable interest in the controversy, was overruled. *Woodmen of the World Life Ins. Society v. Olsen,* ante, p. 12, 2 N. W. (2d) 353.

The cause was heard below on the following stipulation of facts:

"The claimant was employed by the employer from November 1, 1931, until May 27, 1939; that during the year 1933 claimant was married to her present husband but continued to work for the employer; that on or prior to May 27, 1939, claimant's husband was transferred by his employer to Davenport, Iowa, to which city he was to continue his employment; that claimant voluntarily left her work with the employer for the only reason of being with her husband; that she on or about May 27, 1939, went to Davenport, Iowa, for that purpose; that her leaving her work was not in any way induced or caused by any act or conduct of the employer; that on June 3, 1940, she registered for work at a public employment office at Davenport and made her claim for benefits against the Nebraska unemployment compensation fund; that any benefits which might be paid under her claim would be charged to the reserve account of the employer."

On these facts the employer contends that employee is disqualified as a claimant for unemployment benefits by the following provisions of the legislative act:

"An individual shall be disqualified for benefits: (a) For the week in which he has left work voluntarily without good cause, if so found by the commissioner, and for not more

than the five weeks which immediately follow such week, as determined by the commissioner according to the circumstances in each case: Provided, that such individual shall be disqualified from benefits for any week of unemployment when he does not report in person to a Nebraska State Employment Service Office." Comp. St. Supp. 1939, sec. 48-705.

Within the meaning of this legislation, did claimant leave the work of her employment voluntarily "without good cause?" Both parties agree that this is the question for solution. The commissioner of the department of labor argues that the unemployment compensation law is remedial in its nature and should be liberally construed to give effect to its beneficent purposes; that the husband of employee had a right to select the domicile for himself and his wife; that it was her duty to live with him; that when she voluntarily left her employment to go with him to their new home in a different city she did so with "good cause." On the other hand, the employer contends that the law cannot be extended by construction to noncompensable claims and that employee voluntarily left her work "without good cause."

It was a legislative purpose to ameliorate ills growing out of labor troubles and unemployment. Protection of the public from pauperism and from other burdens created by unemployment was also in the minds of the lawmakers. The legislature considered these subjects and acted directly on them. Provision was made for the creation, conservation and distribution of funds to make the law effective. These funds were not intended for disqualified claimants for benefits. Disqualification as well as eligibility of claimants must be considered in giving effect to the words "without good cause." The legislative act does not deal directly with domestic relations. Of course it is the duty of a wife to live with her husband while the marital relation exists, if conditions permit, but the unemployment compensation law does not relieve the husband from his duty to support his wife. Her employer did nothing to prompt her decision to leave her work. The cause of her voluntary action had no connection with the abandoned relation of employer and employee.

The purposes and import of the unemployment compensation law in its entirety indicate that a compensable claim for benefits must have some connection with, or relation to, the employment which the employee has lost. As stated in a recent opinion:

"Disqualification under the act depends upon the fact of voluntary action and not the motives which brought it about. * * *

"The unemployment compensation act does not purport to grant benefits to workmen who leave their work voluntarily." *Deshler Broom Factory v. Kinney,* 140 Neb. 889, 2 N. W. (2d) 332.

A compensable claim for benefits under the Nebraska unemployment compensation law must have some relation to, or connection with, the employment which employee has lost. The views of the law herein expressed, when applied to the stipulated facts, lead to the conclusion that claimant left her employment "without good cause" within the meaning of that term as used in the statute, and that her claim was properly disallowed by the district court.

AFFIRMED.