ACCEPTED
15-25-00041-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/21/2025 3:54 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00041-CV**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/21/2025 3:54:32 PM
CHRISTOPHER A. PRINE
Clerk

In the Court of Appeals
For the Fifteenth Judicial District
Austin, Texas

———————————

Appraisal Review Board of the Harris County Appraisal District,
*Appellant,*

v.

Texas Workforce Commission

and Redona Hall,

*Appellees.*

———————————

On Appeal from the

270th District Court of Harris County, Texas

———————————

## APPELLEE TEXAS WORKFORCE COMMISSION'S BRIEF

———————————

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

STEVEN ROBINSON
Division Chief, Tax Litigation Division

WILLIAM COHEN
Assistant Attorney General
State Bar No. 24082839
Tax Litigation Division
P.O. Box 12548; MC–029
Austin, TX 78711–2548
(512) 475–1743
(512) 478–4013 *Fax*
Will.Cohen@oag.texas.gov
*Attorney for Appellee*

## IDENTITY OF PARTIES AND COUNSEL

Appellee Texas Workforce Commission incorporates Appellant's Identity of the Parties and Counsel and supplements with the following:

**Appellant**
Appraisal Review Board of the Harris County Appraisal District

**Co-Appellee**
Texas Workforce Commission

**Co-Appellee**
Redona Hall

**Counsel for Appellant**
Ramon G. Viada III
State Bar No. 20559350
Viada & Strayer
17 Swallow Tail Court
The Woodlands, Texas 77381
(281) 419-6338
rayviada@viadastrayer.com

**Counsel for Appellee Texas Workforce Commission**
William Cohen
Assistant Attorney General
State Bar No. 24082839
Tax Litigation Division
P.O. Box 12548; MC–029
Austin, TX  78711–2548
(512) 475–1743
(512) 478–4013 *Fax*
Will.Cohen@oag.texas.gov

# Table of Contents

IDENTITY OF PARTIES AND COUNSEL ..................................................ii

TABLE OF CONTENTS ...................................................................iii

INDEX OF AUTHORITIES ..................................................................v

STATEMENT OF THE CASE.................................................................ix

STATEMENT REGARDING ORAL ARGUMENT ..................................1

ISSUES PRESENTED........................................................................1

STATEMENT OF THE FACTS...............................................................1

SUMMARY OF THE ARGUMENT ...........................................................3

ARGUMENT.....................................................................................5

    I.    TWC decisions are reviewed under the substantial evidence *de novo* standard of review...........................................................5

    II.   Appraisal Review Board members are employees of the Appraisal District under the Texas Unemployment Compensation Act. . 7

    III.  TWC correctly awarded Hall unemployment benefits since the ARB reduced Hall's hours.................................................7

        a.  Employees may qualify for unemployment benefits even if they remain partially employed by their employer................8

        b.  Hall qualified for unemployment benefits as she was partially unemployed by the Board for the relevant period...9

        c.  Hall did not voluntarily quit. ...........................................10

        d.  The trial court correctly found that there was substantial evidence to support the TWC decision. . ...........................14

        e.  TUCA's exception to unemployment benefits under Section 201.091 of the Labor Code does not apply. ...........16

IV.    There is no conflict between the Texas Tax and Labor Codes. 18

    a.  This Court should disfavor any attempt to create a conflict between the Labor Code and Tax Code. ............................ 19

    b.  The Board's per diem pay structure does not change the analysis of whether Board members are entitled to unemployment benefits or not. ........................................... 20

V.    The trial court correctly determined that the Board was not entitled to chargeback protection. ........................................... 23

    a.  *Retama* governs this issue. .................................................. 24

    b.  Hall's partial separation from employment was not required by the relevant statute – Section 6.41 of the Tax Code. ................................................................................. 25

    c.  Hall's partial separation from employment at best indirectly accompanied other statutes unrelated to employee separation. ........................................................... 26

VI.    This Court is not bound by the trial court's findings of fact and conclusions of law. ........................................................... 28

CONCLUSION AND PRAYER .................................................... 30

CERTIFICATE OF COMPLIANCE ......................................... 32

CERTIFICATE OF SERVICE .................................................... 33

# Index of Authorities

## CASES

*City of Houston v. Morris*,
   23 S.W.3d 505 (Tex. App.—Houston [1st Dist.] 2000, no pet.)..........6

*Collingsworth Gen. Hosp. v. Hunnicut*,
   988 S.W.2d 706 (Tex. 1998) ................................................................5

*Dozier v. Tex. Emp't Comm'n*,
   41 S.W.3d 304 (Tex. App.—Houston [14th Dist.] 2001,
   no pet.).................................................................................5, 7, 17

*El Paso v. Pub. Util. Comm'n*,
   883 S.W.2d 179 (Tex. 1994)................................................................5

*Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*,
   662 S.W.2d 953 (Tex. 1984) ...................................................... 6, 18, 28

*Gulf Land Co. v. Atlantic Refining Co.*,
   134 Tex. 59, 131 S.W.2d 73 (1939)........................................................6

*Harris Cnty. App. Dist. v Tex. Workforce Comm'n*,
   519 S.W.3d 113, 118-20 (Tex. 2017) ....................................7, 8, 19, 22

*Hegar v. American Multi-Cinema, Inc.*,
   605 S.W.3d 35, 40 (Tex. 2020) ........................................................29

*In re Mem'l Hermann Hosp. Sys.*,
   464 S.W.3d 686 (Tex. 2015) ............................................................ 19

*Julien v. Nordman Indus., Inc.*,
   No. 01-98-00320-CV, 1999 WL 497399 (Tex. App.—Houston [1st
   Dist.] July 15, 1999, pet. denied ...................................................... 13

*Kaup v. Tex. Workforce Comm'n*,
   456 S.W.3d 289 (Tex. App.—Houston [1st Dist.]
   2014, no pet.) ...................................................................5, 6, 15

*Madisonville Consol. Indep. Sch. Dist. v. Texas Employment Comm'n*,
 S.W.2d 310, 314 (Tex. App.—Corpus Christi 1991, writ denied) ......28

*McCrory v. Henderson*,
 431 S.W.3d 140, 143 (Tex. App.—Houston [14th Dist.] 2013,
 no pet.).................................................................................... 18

*Meggs v. Tex. Unemployment Comp. Comm'n*,
 234 S.W.2d 453 (Tex. App.—Fort Worth 1950, writ ref'd)............... 13

*Mercer v. Ross*,
 701 S.W.2d 830 (Tex. 1986) ................................................5

*MJR Corp. v. B & B Vending Co.*,
 760 S.W.2d 4, 10 (Tex. App.—Dallas 1988, writ denied)................. 29

*Montanaro v. Montanaro*,
 946 S.W.2d 428, 431 (Tex. App.—Corpus Christi 1997, no writ) ..... 29

*Olivarez v. Aluminum Corp. of Am.*,
 693 S.W.2d 931 (Tex. 1985) ................................................5

*Pegasus Energy Grp. v. Cheyenne Pet. Co.*,
 3 S.W.3d 112, 121 (Tex. App.—Corpus Christi 1999, pet. denied)....29

*Regal Fin. Co. v. Tex. Star Motors, Inc.*,
 355 S.W.3d 595 (Tex. 2010)................................................ 6

*Retama Dev. Corp. v. Tex. Workforce Comm'n*,
 971 S.W.2d 136, 139 (Tex. App.—Austin 1998, no pet.).........12, 24, 25

*Sears, Roebuck & Co. v. Nichols*,
 819 S.W.2d 900, 903 (Tex. App.—Houston [14th Dist.] 1991, writ
 denied).................................................................................29

*State v. Heal*,
 917 S.W.2d 6, 9 (Tex. 1996)............................................................2

*Stone v. Tex. Workforce Comm'n,*
    2016 WL 6407303 (Tex. App.—Austin, 2016, pet. denied) .......... 6, 14

*Tex. Emp't Comm'n v. Camacho,*
    394 S.W.2d 35 (Tex. App. Dallas 1965, no writ) ................................. 6

*Tex. Emp't Comm'n v. Huey,*
    342 S.W.2d 544 (Tex. 1961)..................................................... 13

*Tex. Emp. Comm'n v. Hansen,*
    342 S.W.2d 551 (Tex. 1961) .................................................... 13

*Tex. Emp't Comm'n v. Lewis,*
    777 S.W.2d 817, 822 (Tex. App.—Fort Worth 1989, no writ)...........28

*Tex. R.R. Comm'n v. Austin,*
    524 S.W.2d 262 (Tex.1975) ....................................................... 6

*Tex. Workforce Comm'n v. City of Houston,*
    274 S.W.3d 263 (Tex. App.—Houston [1st Dist.] 2008,
    no pet.).......................................................................6, 15

*Tex. Workforce Comm'n v. Wichita Cnty.,*
    548 S.W.3d 489, 494–95 (Tex. 2018).................................................8

*Uranga v. Tex. Workforce Comm'n,*
    319 S.W.3d 787, 790 (Tex. App.—El Paso 2010, no pet.).............10, 13

## STATUTES

Tex. Gov't Code § 311.026 ........................................................... 22

Tex. Lab Code § 21.001 ............................................................... 10

Tex. Lab. Code § 201.091 ............................................................ 21

Tex. Lab. Code § 201.091(a) ........................................................ 21

Tex. Lab. Code § 201.091(b) ................................................... 8, 21

Tex. Lab. Code § 201.091(c) ........................................................ 8

Tex. Lab. Code § 201.091(c)(2) .................................................. 10

Tex. Lab. Code § 201.091(e) .................................................. 16–18

Tex. Lab. Code § 204.022(a)(2) .............................................. 23–24

Tex. Lab. Code § 207.002–.003 .................................................... 8

Tex. Lab. Code § 207.021(a)(2–8) .......................................... 9–10

Tex. Lab. Code § 207.021(a)(8) .................................................. 10

Tex. Lab. Code § 207.045 ............................................................ 10

Tex. Lab. Code § 212.202 ............................................................. 5

Tex. Tax Code § 6.41(e) ............................................................... 25

Tex. Tax Code § 6.41(f) ............................................................... 25

Tex. Tax Code § 6.42(c) .............................................................. 20

Tex. Tax Code § 25.19 ................................................................. 26

Tex. Tax Code § 25.22(a) ............................................................ 26

Tex. Tax Code § 41.12 ................................................................. 26

Tex. Tax Code § 41.44 ................................................................. 26

# Statement of the Case

*Nature of the Case:* Pursuant to the Texas Labor Code, the Appraisal Review Board of the Harris County Appraisal District (the "ARB" or the "Board") brought suit against the Texas Workforce Commission ("TWC") and Redona Hall ("Hall") seeking judicial review of the Commission's decision granting Hall's claim for unemployment benefits under Section 204.022 of the Texas Unemployment Compensation Act ("TUCA") and the Commission's subsequent decision that ARB was subject to chargeback under Section 204.022 of the Texas Labor Code.

*Course of Proceedings:* ARB requested judicial review of the TWC's decision before the 270th District Court in Harris County. This case was tried on December 31, 2024. Hall appeared *pro se*. The TWC and ARB appeared through their attorneys of record.

*Trial Court Disposition:* The trial court found the evidence submitted by the TWC and Hall proved as a matter of law that there was substantial evidence to support TWC's decision and entered an order affirming the TWC's decision.

ix

## Statement Regarding Oral Argument

The TWC believes that oral argument will not aid the Court in addressing the legal issues presented in this appeal given that the facts of this case are direct, and the law is well established. However, if this Court decides to hold argument, the TWC requests to participate.

## Issues Presented

1. Did the trial court err in concluding there was substantial evidence to support the TWC's decision that Hall was entitled to unemployment benefits?

2. Does the Texas Tax Code exclude members of the ARB from receiving partial unemployment benefits for reduced hours under the Texas Unemployment Compensation Act?

3. If Hall is lawfully entitled to unemployment benefits, does that render the ARB subject to chargeback under Section 204.022 of the Labor Code?

## Statement of the Facts

Appellant, Redona Hall, was appointed to a two-year term as a member of the Appraisal Review Board of the Harris County appraisal district beginning in 2021. 3 CR.2901. Pursuant to statute, Hall began her term on March 2, 2021. 1 CR.436. Hall's term was statutorily due to end on December 31, 2022. 1 CR.436. During Hall's term, her work hours were reduced from an average of forty hours per week to eight hours per week. 1 CR.18. As such, on January 16, 2022, while still serving her term as a Board member, Hall filed for unemployment benefits. 3 CR.2901.

The work on the board was seasonal in nature. 1 CR.436. From November through April, ARB members generally worked a reduced amount of time due to the decreased workload. *Id.* Thus, Hall went from working forty-hours per week to working a singular eight-hour day per week. *Id.* The TWC made an initial determination finding Hall eligible for unemployment benefits.

In 2023, the ARB protested TWC's decision to grant Hall unemployment benefits. 1 CR.8. Following a telephonic hearing conducted by the TWC, the TWC found that Hall qualified for unemployment benefits. 1 CR 18. The TWC Appeal Tribunal affirmed this decision, and in support thereof, found that "due to a lack of work, the employer reduced the claimant's hours to eight hours per week while she was still serving her term." *Id.* The TWC Commissioners affirmed the Appeal Tribunal Decision. 1 CR.15. The ARB then filed an appeal of the Tribunal's decision to the district court. 1 CR.8.

Trial was held on December 31, 2024. 3 CR.2874. Hall testified at trial on behalf of herself and TWC. RR.50:12–23 Scott Hilsher, General Counsel for the ARB, testified on behalf of the ARB. RR.19:10–20 After hearing the evidence and argument of all parties, the trial court found that the TWC's decision was supported by substantial evidence and affirmed TWC's decision. 3 CR.2874. The District Court denied ARB Harris's Motion for New Trial. 3 CR.2925.

## Summary of the Argument

The trial court correctly affirmed the TWC's decision. The court must affirm the TWC's decision when it is supported by substantial evidence — even if the court would have ruled differently. Substantial evidence supports the TWC decision that Hall was eligible to receive unemployment benefits because her hours were reduced by her employer. Hall was not terminated for misconduct, nor did she voluntarily quit from her position as a board member. Hall was eligible for unemployment benefits even though her term as an ARB board member had not yet expired.

There are no issues of fact for a court to review when reviewing a TWC unemployment benefits decision, only one question of law – whether the TWC's decision was supported by substantial evidence. Appellants presented substantial evidence to the District Court – enough for the Court to affirm the TWC decision. Appellant then had the burden of showing that no reasonable factfinder could have arrived at the TWC's decision. Appellant failed to meet this burden. Accordingly, the trial court correctly affirmed the TWC's decisions.

Hall was not working her customary full-time hours and thus TUCA's exception to unemployment benefits under Section 201.091 of the Labor Code does not apply.

Further, nothing about the fact that ARB members are paid on a *per diem* basis prevents them from receiving unemployment benefits. There is no conflict between the Labor and Tax codes on this issue.

Moreover, Appellant is not excluded from chargebacks to its account as Hall's partial separation from employment was not required by the relevant statute as prescribed under Section 204 of the Labor Code.

**Argument**

## I. TWC decisions are reviewed under the substantial evidence *de novo* standard of review.

Judicial review of a TWC decision on unemployment benefits raises only a question of law in a trial de novo reviewed under the substantial evidence rule. Tex. Lab. Code § 212.202; *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). Under this standard, the reviewing court presumes that the TWC's decision is valid. *Collingsworth Gen. Hosp. v. Hunnicut*, 988 S.W.2d 706, 708 (Tex. 1998). The party seeking to set the decision aside carries the burden of showing it was not reasonable or supported by substantial evidence. *Kaup v. Tex. Workforce Comm'n*, 456 S.W.3d 289, 294 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The test is not whether the court would have reached the same conclusion if trying the matter de novo, but simply whether reasonable minds could have reached the agency's decision. *Id.*; *El Paso v. Pub. Util. Comm'n*, 883 S.W.2d 179, 185 (Tex. 1994).

Substantial evidence exists if "more than a mere scintilla of evidence supports the agency's decision." *Olivarez v. Aluminum Corp. of Am.*, 693 S.W.2d 931, 932 (Tex. 1985). "The evidence may be substantial and yet greatly preponderate the other way." *Id*. A court may not set aside a TWC decision merely because there was conflicting or disputed testimony or because the court would have preferred a different conclusion or outcome. *Mercer*, 701 S.W.2d at 831. Critically, the TWC has the discretion to make credibility determinations and to attach whatever weight it considers appropriate to various pieces of evidence. *Dozier v. Tex. Emp't Comm'n*, 41 S.W.3d 304, 309 (Tex. App.—Houston [14th Dist.] 2001, no pet.). A court may set aside a TWC decision only if it was made without regard to the law or

5

the facts and therefore was unreasonable, arbitrary, or capricious. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953 (Tex. 1984).

A reviewing court is obligated to sustain an administrative agency order on ***any legal basis shown in the record***. *City of Houston v. Morris*, 23 S.W.3d 505, 509 (Tex. App.—Houston [1st Dist.] 2000, no pet.); *Tex. R.R. Comm'n v. Austin*, 524 S.W.2d 262, 279 (Tex.1975); *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939) (emphasis added).

The TWC need only present more than a scintilla of evidence that would reasonably support its decision on any possible ground. *Stone v. Tex. Workforce Comm'n*, 2016 WL 6407303 at *4 (Tex. App.—Austin, 2016, pet. denied) (mem. op.). Courts have held that portions of the administrative record combined with either witness testimony or the plaintiff's admissions can constitute more than a mere scintilla of evidence and require the granting of summary judgment. *Kaup v. Tex. Workforce Comm'n*, 456 S.W.3d 289, 295 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Tex. Workforce Comm'n v. City of Houston*, 274 S.W.3d 263, 265 (Tex. App.—Houston [1st Dist.] 2008, no pet.). In contrast, the plaintiff must conclusively negate or "destroy" all reasonable support for the decision.[1] *Tex. Emp't Comm'n v. Camacho*, 394 S.W.2d 35 (Tex. App.—Dallas 1965, no writ); *City of Houston*, 23 S.W.3d at 508.

When a question hinges on a factual determination, TWC acts as a factfinder. The TWC has the discretion to make credibility determinations

---

[1] Evidence that is so weak as to do no more than create a mere surmise or suspicion that a fact exists is less than a scintilla. *Regal Fin. Co. v. Tex. Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010).

and to attach whatever weight it considers appropriate to various pieces of evidence. *Dozier,* 41 S.W.3d at 309.

## II. Appraisal Review Board members are employees of the Appraisal District under the Texas Unemployment Compensation Act.

Generally, members of Appraisal Review Boards in Texas are considered employees for purposes of unemployment benefits eligibility under the Texas Unemployment Compensation Act ("TUCA"). *Harris Cnty. App. Dist. v Tex. Workforce Comm'n*, 519 S.W.3d 113, 118–20 (Tex. 2017). The Texas Supreme Court has stated that the Tax Code does not prohibit appraisal review board members from being employees of the district for TUCA purposes. *Id.* at 120.

## III. TWC correctly awarded Hall unemployment benefits since the ARB reduced Hall's hours.

The TWC and the trial court conducted a straightforward review of an unemployment benefits decision, which Appellant attempts to complicate or conflate. At the end of the day, the question is simple: is the TWC's decision finding Hall qualified for unemployment benefits supported by substantial evidence? The TWC, in its capacity as factfinder, found that Hall was partially unemployed due to a reduction in her working hours. The trial court found that there was substantial evidence to support that decision. Both decisions are correct.

### a. Employees may qualify for unemployment benefits even if they remain partially employed by their employer.

Hall remained employed by the Board when she applied for unemployment benefits. 1 CR.18; RR.50:21–24. However, the reduction in Hall's working hours met the statutory definition of unemployment under the TUCA that, in turn, allowed her to qualify for unemployment benefits.

TUCA grants certain benefits to individuals who become either totally or partially unemployed. *Harris Cnty. App. Dist.*, 519 S.W.3d at 118; *see* Tex. Lab. Code § 207.002–.003. Specifically, the statutory framework of TUCA, as confirmed by the Texas Supreme Court, states that an individual is considered unemployed if the individual is either "totally unemployed" or "partially unemployed." Tex. Lab. Code § 201.091(c). The Labor Code defines partial unemployment as less than full–time work, with wages below a defined threshold. Tex. Lab. Code § 201.091(b).[2]

The Texas Supreme Court affirmed and clarified this framework in *Texas Workforce Comm'n v. Wichita Cnty.*, 548 S.W.3d 489, 494–95 (Tex. 2018). Importantly, formal separation or severance from employment is not a prerequisite to unemployed status for an individual. *Wichita Cnty.*, 548 S.W.3d at 495. *Wichita County* further clarifies the Labor Code provides a specific definition that includes partial unemployment when wages are insufficient. *Id.*

---

[2] Specifically, the Labor Code states that an individual is partially unemployed in a benefit period of less than full-time work if the individual's wages payable for that benefit period are less than the sum of: (1) the benefit amount the individual would be entitled to receive if the individual was totally unemployed; and (2) the greater of: $5; or 25 percent of the benefit amount. Tex. Lab. Code § 201.091(b). Appellant does not assert that Hall is ineligible for unemployment benefits because she failed to meet these wage thresholds.

### b. Hall qualified for unemployment benefits as she was partially unemployed by the Board for the relevant period.

The Commission's decision to pay Hall unemployment benefits correctly applied the statutory framework promulgated by the legislature, recognizing that even though she remained employed by the Board when she applied for unemployment benefits, her wages and hours fell below the statutory threshold for full-time work, and, as such, she suffered a partial separation from work. 1 CR.19–21.

Hall was serving her two-year term as a member of the Appraisal Review Board, which was scheduled to expire on December 31, 2022. 1 CR.18. The TWC found that the ARB reduced Hall's hours from an average of forty hours a week to eight hours per week for the period between January and April 2022. *Id*. Hall had neither resigned from the Board nor was she discharged by the Board. RR.51:12–20. She continued serving as an ARB member for the entirety of her term, despite the reduction in her hours, and did not submit her resignation until December 26, 2022, which was effective December 31, 2022. *Id*.

The parties do not dispute that Hall did not resign from the ARB during the relevant period. Nor is it contested that Hall was not discharged by the Board for the relevant period. Finally, the record reflects — without dispute that Hall's hours were reduced during this period.

On January 17, 2022, during her term, Hall filed her initial claim for unemployment benefits, effective January 16, 2022. 1 CR.18. The TWC determined that her reduced hours qualified her as partially unemployed under the statutory eligibility criteria. 1 CR.17–22; Tex. Lab. Code §

207.021(a)(2–8). Hall remained employed by the ARB, albeit with reduced hours. The TWC found that the ARB "may have been forced by a lack of work to reduce [Hall's] hours" but nevertheless Hall qualified for unemployment benefits. 1 CR.19. The reduction in Hall's working hours met the statutory definition of unemployment. Tex. Lab. Code § 201.091(c)(2).

TWC's conclusion that Hall's reduced hours met the definition of unemployment reflects a reasonable application of the Labor Code to the facts. Acting within its authority and discretion as the fact-finding body, TWC properly evaluated the evidence, assessed the credibility of both Hall and the ARB, and applied the relevant standards. Tex Lab. Code § 21.001. The Commission's role was to assess whether her reduced hours and wages met the statutory threshold for unemployment not merely to determine whether Hall remained employed in some capacity.

The Commission's decision to award Hall benefits properly applied the statutory framework, recognizing that, although she remained a Board member, her reduced wages and hours qualified her as "unemployed" under the Labor Code's express definition. Tex. Labor Code §§ 201.091(c)(2); 207.021(a)(8). There is a reasonable basis for the TWC's conclusion that Hall qualified for unemployment benefits.

### c. Hall did not voluntarily quit.

Employees who voluntarily quit without good cause are not eligible to receive unemployment benefits. *See* Tex. Lab. Code § 207.045; *Uranga v. Tex. Workforce Comm'n*, 319 S.W.3d 787, 790 (Tex. App.—El Paso 2010, no pet.) When a court is asked to determine whether an employee initiated [their]

10

separation from work, the court has often sought proof of an affirmative action by the employee towards separation before making such a determination. *Id.*

There is no evidence Hall voluntarily quit at the time she applied for unemployment benefits. Hall filed her initial claim for unemployment benefits on January 17, 2022, well before her resignation was submitted to the ARB. True, Hall did submit a resignation letter dated December 26, 2022. RR.51:12–20. This letter stated her resignation would be effective December 30, 2022. RR.51:12–20. Hall should have been receiving benefits before her resignation in December of 2022 and those benefits would have been dispersed due to her partial unemployment throughout most of 2022.

Even though it is undisputed that Hall continued to serve as a Board member through the end of her term in 2022, Appellant still argues that Hall does not qualify for unemployment benefits under the voluntary quit disqualification. Appellant's Br. 42–48. By any plain review of Hall's employment by the ARB, Appellant is clearly wrong – Hall continued to work for the ARB, but at significantly reduced hours, through the end of her term in 2022. Hall reaffirmed this through testimony at trial, which was not disputed by Appellant. *Id.*

Despite the clear, undisputed fact that Hall served the entirety of her appointed term, Appellant still tries to argue that Hall should be disqualified from benefits under the voluntary quit rule from Section 207.045. Appellant's argument is that a Board member's service "is analogous" to other precedents where the TWC disqualifies employees from benefits who know "their commitment is limited and pre-structured," and then later file a claim for unemployment benefits. Appellant cites to several cases to support this

11

argument. But all the cases Appellant cites involve a genuine, voluntary quit upon a true cessation of employment, not a vague, "analogous" scenario where an employee knew their work commitment was somehow "limited or pre–structured."[3] None of the cases Appellant cites involve a scenario where an employee continued to work for an employer with reduced hours. Specifically, the cases Appellant cite involve:

- A claimant who participated in a training program and sought benefits after completing the program. Appellant's Br. 42–43. The claimant in this case **finished** the program and then sought benefits.

- A claimant who participated in a work study program and sought benefits after completing the program. *Id*. at 43. Again, the claimant in this case **finished** the program and then sought benefits.

- An employee who worked on a sea oil vessel for rotating periods of 28 days. The employee sought benefits during one of his 28–day periods when he was not working, despite knowing he was returning to the vessel for another rotation. *Id*. at 44–45. In this scenario, the employee sought benefits even though he was doing no work and was planning on returning. This was not a scenario involving reduced hours while still on the job.

---

[3] These cases cited by Appellant are from TWC's Appeals Policy and Precedent Manual. However, none of these TWC holdings are caselaw that are binding on this Court. Indeed, courts have stated that TWC has not acted arbitrarily or capriciously by failing to apply the same rules from other cases in the Appeals Policy and Precedent Manual; a prior decision from the Manual does not establish controlling precedent. *Retama Dev. Corp. v. Tex. Workforce Comm'n*, 971 S.W.2d 136, 139-40 (Tex. App.—Austin 1998, no pet.).

Appellant also cites to several cases for the proposition that benefits are not payable when it is an employee's, not an employer's decision, that causes the separation. *Id*. at 46–48.[4] But this argument is not relevant – Hall did not make any decision to "separate" from her service from the ARB until her term ended. She did not decide to resign before her term ended or stop performing work. She did not decide to work reduced hours. She did not decide her own assignments or make her own schedule. The ARB created the schedule. *See* RR.45:22–47:21. Indeed, Appellant is trying to twist the logic of the separation, implying that Hall, through her knowledge of the ARB's seasonal schedule, decided to voluntarily quit. But the plain fact remains that she served her entire term.

The language in Section 207.045 is clear: an individual is disqualified for benefits if the individual *left* the individual's last work voluntarily without good cause connected with the individual's work. The record is abundantly clear, and undisputed, that Hall at no point "left" her position with the Board. This Court should not entertain Appellant's attempt to expand the clear language of Section 207.045 to a nebulous scenario involving "limited or pre–structured" work commitments.

---

[4] Cases cited by Appellant include *Tex. Emp. Comm'n v. Huey*, 342 S.W.2d 544 (Tex. 1961) (benefits were payable after management shut down a sportswear plant); *Tex. Emp. Comm'n v. Hansen*, 342 S.W.2d 51 (Tex. 1961) (same); *Uranga v. Tex. Workforce Comm'n*, 319 S.W.3d 787 (Tex. App.—El Paso 2010, no pet.) (claimant left job fully due to excessively long hours); *Julien v. Nordman Indus., Inc.*, No. 01-98-00320-CV, 1999 WL 497399 (Tex. App.—Houston [1st Dist.] July 15, 1999, pet. denied) (employee resigned to claim economic hardship for student loans); *Meggs v. Tex. Unemployment Comp. Comm'n*, 234 S.W.2d 453 (Tex. App—Fort Worth 1950, writ ref'd) (employee left employment to care for husband). None of these cases involved reduced hours where the employee continued to work for the employer, as Hall did.

Indeed, Appellant does not even bother to identify when Hall's "voluntary quit" would have occurred. Was it when her hours were reduced? Was it when she filed her claim for unemployment benefits? But an application for unemployment benefits does not constitute some kind of voluntary quit or resignation under the Labor Code. To conclude that Hall voluntarily quit prior to the end of her term is not supported by fact or logic, as Hall continued to perform her scheduled duties for the ARB even after she filed her initial claim for unemployment benefits.

Hall served the entirety of her statutorily-defined term, through the end of 2022. She did not resign. She did not voluntarily quit. TWC correctly and reasonably determined that Hall, after being given reduced work months before the formal end of her term in 2022, was partially unemployed for reasons other than resignation or penalty due to work–related misconduct.

### d. The trial court correctly found that there was substantial evidence to support the TWC decision.

The trial court correctly found that there was substantial evidence to support the TWC's decision awarding Hall unemployment benefits. The TWC need only present more than a mere scintilla of evidence that would reasonably support its decision on any possible ground. *Stone v. Tex. Workforce Comm'n*, 2016 WL 6407303 at *4 (Tex. App.—Austin, 2016, pet. denied) (mem. op.).

At trial, the TWC presented the complete, 386-page TWC Certified Appeal File regarding Hall's claim as its sole exhibit, which was admitted into evidence.[5] The Certified Appeal File contained the complete record of the

---

[5] Appellant also relied on the same Certified Appeal File as an Exhibit. *See* 2 RR.226-611.

14

TWC decision regarding Hall's unemployment benefits, at every level of the administrative process. The Certified Appeal File contained Hall's initial claim, as well as arguments and evidence presented by the Board.

Portions of the administrative record combined with witness testimony can establish more than a mere scintilla of evidence and thus constitute substantial evidence. *Kaup v. Tex. Workforce Comm'n*, 456 S.W.3d 289, 295 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Tex. Workforce Comm'n v. City of Houston*, 274 S.W.3d 263, 265 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

At trial, the TWC administrative record admitted into evidence established the TWC's factual findings – namely, that TWC found that the Board reduced Hall's hours, and she was thus eligible for unemployment benefits. Hall confirmed at trial that her hours were reduced, and that she did not resign before her statutorily-defined term was over.

Further, at trial, TWC presented testimony from Hall herself. At trial, Hall testified that:

- She served the entirety of her Board term, and did not resign before her term was due to statutorily end. RR.51:4–20.
- She filed for unemployment benefits when she still had most of a year left in her term as a board member. RR.52:2–5.
- She filed for unemployment benefits due to reduced hours – she was receiving less assignments that she initially was at the start of her term. RR.52:6–20.

It is notable that the exact same witnesses from the TWC administrative telephonic hearing regarding Hall's unemployment benefits

15

also testified at trial – Hall, and Scott Hilsher, the General Counsel for the Appraisal Review Board. *See* 2 CR.1221–1262; RR.19–49, 50–56. The trial court had the same opportunity to weigh the conflicting testimony – from the same witnesses, with principally the same testimony – and still affirmed the TWC's decision.

Hall's testimony, along with the facts established in the TWC certified record, constituted substantial evidence to support the TWC decision. Indeed, none of these findings were even disputed at trial by the Board, and the Board did not cross-examine Hall in any capacity. RR.53:10–11. The trial court properly affirmed the TWC's decision that Hall was entitled to unemployment benefits.

### e. TUCA's exception to unemployment benefits under Section 201.091 of the Labor Code does not apply.

Appellant argues that Hall is ineligible for unemployment benefits under Section 201.091(e) of the Labor Code. Appellant's Br. 37–42. Section 201.091(e) states that:

> For purposes of this subtitle, an individual is not considered unemployed and is not eligible to receive benefits for any benefit period during which the individual works the ***individual's customary full-time hours***, regardless of the amount of wages the individual earns during the benefit period.

Tex. Lab. Code § 201.091(e) (emphasis added).

The core point of contention on this issue is what Hall's "customary full-time hours" were in the context of her job as a Board member. Appellant

16

argues that since Hall's "customary full-time hours" were dependent on the tax schedule, Hall falls under this exception and is not eligible for unemployment benefits.

However, this was not the conclusion of the TWC. The TWC found that Hall was ***not*** working her customary full-time hours. Specifically, the TWC found that Hall's hours were reduced from an average of 40 hours a week to eight hours per week, while she was still serving her term. CR.18.

When a question hinges on a factual determination, TWC acts appropriately in its role as a factfinder. The TWC has the discretion to make credibility determinations and to attach whatever weight it considers appropriate to various pieces of evidence. *Dozier,* 41 S.W.3d at 309. The TWC received evidence from the ARB about the seasonal nature of its workload, including schedules and its entire Member Manual. *See* 3 CR.1097–1263. The TWC heard testimony from both the Board and Hall during the administrative process. It made the determination that Hall was ***not*** working her customary full-time hours, regardless of the "seasonal nature" of her job as a Board member. Indeed, the TWC noted that the ARB may have been "forced by a lack of work" to reduce Hall's hours. 1 CR.19. The TWC found Hall's reduced hours for the period at issue were not her customary full-time hours.

At trial, the trial court had the same opportunity to weigh the credibility of the witnesses and determine whether Hall was working her customary full-time hours for the relevant benefits period. As noted previously, the same witnesses from the TWC administrative level testified at trial – Hall and Scott Hilsher, General Counsel for the Board. *See* CR.1221–1262; RR.19–49, 50–56. The trial court had the same opportunity to weigh the conflicting testimony –

17

from the same witnesses, with principally the same testimony – and affirmed the TWC's decision.

"On controverted issues of fact, we may not substitute our judgment for that of the TWC." *McCrory v. Henderson*, 431 S.W.3d 140, 143 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Even if reasonable minds might differ as to the correct decision, as long as some reasonable minds could reach the same decision as the TWC, then the evidence is substantial, and the decision must be affirmed. *Brinkmeyer*, 662 S.W.2d at 956.

Substantial evidence supports the TWC's finding that Hall was not working her customary full-time hours for the relevant benefit period. As such, the exception from Section 201.091(e) of the Labor Code does not apply, and this Court should affirm the TWC's decision.

## IV.    There is no conflict between the Texas Tax and Labor Codes.

Both Appellant and Appellee agree that there are no factual disputes in the case. Neither party disputes that Hall's hours were reduced. Nor does either party dispute that Hall was not terminated by the Board during her term. Additionally, the parties do not dispute that Hall served the entirety of her term before her resignation. No party challenges the seasonal nature of the ARB's workload. Instead, Appellant relies on unsupported, ambiguous interpretations of the Labor and Tax Codes for its position that Hall cannot be eligible for unemployment benefits. All these arguments fail.

### a. This Court should disfavor any attempt to create a conflict between the Labor Code and Tax Code.

If two statues are in conflict, a court should construe the different provisions in a way that harmonizes rather than conflicts. *Harris Cnty. App. Dist.*, 519 S.W.3d at 122 (citing *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015)).

The Supreme Court has reviewed a similar purported conflict between the Labor and Tax Codes, specifically in a case involving Harris County Appraisal Review Board Members, in *Harris County Appraisal District.* The Court held that the Tax Code simply governs who can serve on an appraisal review board, not what "employment" means for purposes of TUCA. *Id.* at 121. TUCA applies the definition of "employment" that applies to unemployment benefit issues. *Id.* The Tax Code lacks a definition of "employment" or "employee" and serves a different purpose than TUCA. *Id.*

In *Harris County Appraisal District*, the Court rejected Harris County Appraisal District's arguments that the Tax Code conflicted or preempted the Labor Code when it came to determining whether Board members were employees for the purposes of TUCA. *See Id.* at 120–22. This Court should extend the same logic of *Harris County Appraisal District* to this case.

**b. The Board's *per diem* pay structure does not change the analysis of whether Board members are entitled to unemployment benefits or not.**

Appellant argues that the Texas Tax Code's provision that Board members be paid on a *per diem* basis creates an exception in the Labor Code so that Board members are not eligible for partial unemployment benefits. Appellant is mirroring the arguments made by the Appraisal District in *Harris County Appraisal District* – interpreting the basic Tax Code provisions in such way to create an irresolvable "conflict" between the Tax Code and TUCA.

There is no conflict between the Tax Code's structure of appraisal review boards across the state and the TWC's provision that designate unemployment benefits eligibility. Appellant's strained reading of both the Tax and Labor Codes is in fact wholly irrelevant – the fact that Board members are paid on a *per diem* basis does not affect whether a worker receives unemployment benefits (or not). There is zero reason the Board's pay structure should conflict with TUCA.

The Tax Code provides that members of an appraisal review board are entitled to a *per diem* compensation, set by the appraisal district budget for each day the board meets. Tex. Tax Code § 6.42(c). Appellee does not dispute that Hall, like every other appraisal review board member in Texas, was paid on a *per diem* basis, nor does it dispute that this *per diem* pay structured is set up by the Tax Code.

However, Appellant cannot provide a single statute or case in its brief that explicitly prohibits an individual from qualifying for unemployment benefits because he or she is paid on a *per diem* basis. That is because there is nothing inherent about a *per diem* payment scheme that affects whether a

worker qualifies as either employed or unemployed under the Labor Code. Indeed, the important element of whether an individual qualifies as either totally or partially unemployed under the Labor Code is the ***amount of wages*** that an individual is either making or not making, in a specific period. *See generally* Tex. Lab. Code § 201.091.[6]

The method of payment, or frequency of payment, is not relevant to the calculation of whether an individual qualifies as "unemployed" under the Labor Code. The fact that the Board pays its members on a *per diem* basis – common across the State – is not relevant to whether a Board member is eligible for unemployment benefits.

Appellant argues that an "irreconcilable conflict" exists between the Tax and Labor Codes because the *per diem* pay structure of the Board means that Board members do not receive compensation for days on which the Board does not meet, *but* a Board member receiving unemployment benefits might receive compensation for a day on which the Board does not meet.

This is curious logic. There are many different types of pay structures in Texas. An employee that is paid on an hourly basis at a fast-food restaurant may apply for unemployment benefits. In turn, they may receive pay for hours they were not working. There is nothing in either the Labor or Tax Code that states it is inappropriate or illegal for a *per diem* employee to receive partial

---

[6] Specifically, Section 201.091 specifies that an individual is "totally unemployed" in a benefit period when the individual does not perform services for wages in excess of the greater of: (1) $5; or (2) 25 percent of the benefit amount. An individual is "partially unemployed" in a benefit period of less than full-time work if the individual′s wages payable for that benefit period are less than the sum of: (1) the benefit amount the individual would be entitled to receive if the individual was totally unemployed; and (2) the greater of: $5; or 25 percent of the benefit amount. Tex. Lab. Code § 201.091(a-b).

unemployment benefits for hours that he or she did not work. Indeed, this is the entire point of unemployment benefits.

Hall was presumably still being paid by the ARB for the remaining days she still did work for them, as mandated by Section 6.42(c) of the Tax Code. Any "payment" that Hall received for days she did not work for the ARB came in the form of unemployment benefits from the TWC, not the ARB. There is no violation of Section 6.42(c) of the Tax Code being committed here, and no conflict.

Appellant itself quotes from the Texas Government Code, which states:

> If a general provision conflicts with a special or local provision, the provisions shall be constructed, if possible, so that effect is given to both.

Tex. Gov't Code § 311.026.

Appellant cannot point to any specific "special or local provision" in the Tax Code that forbid unemployment benefits being paid to appraisal review board members, municipality, or government workers in a similar statutory scheme. It can only make a strained argument that the statute setting up the *per diem* pay structure somehow conflicts with TUCA.

If the Legislature wanted to explicitly prohibit appraisal review board members from receiving unemployment benefits, they could have. But again, the Supreme Court has held that members of county appraisal review boards are employees for the purposes of TUCA. The "Tax Code does not prohibit or prevent a Board member from being an employee of Harris County Appraisal District for TUCA purposes." *Harris Cnty. App. Dist.*, 519 S.W.3d at 122. As all appraisal review board members in the state are paid on a *per*

*diem* basis, creating such an "irreconcilable conflict" between the Labor and Tax Codes would conflict with the Supreme Court's holding in *Harris County Appraisal District* and essentially render all appraisal review board members ineligible from receiving unemployment benefits.

As in *Harris County Appraisal District*, there is no conflict between the Labor and Tax Codes when it comes to TUCA's partial unemployment scheme. Appellant cannot point to any specific statutory conflict and instead attempts to cobble together a strained argument regarding *per diem* pay status. This Court should reject this argument, just as the Supreme Court rejected Harris County Appraisal District's arguments in *Harris County Appraisal District*.

## V. The trial court correctly determined that the Board was not entitled to chargeback protection.

Section 204.022 of the Labor Code provides an exception for employers, whose account may not be charged for benefits under certain circumstances, even if an employee qualifies for unemployment benefits. Specifically, Section 204.022 states that benefits computed on benefit wage credits of an employee or former employee may not be charged to the account of an employer if the employee's last separation from the employer's employment before the employee's benefit year "**was required by a statute of this state** or an ordinance of a municipality of this state." Tex. Lab. Code § 204.022(a)(2) (emphasis added).

The ARB is not entitled to chargeback exclusion under this statute. TWC does not dispute that Hall's reduced hours constitute at least a partial "separation" as defined in the statute. However, Hall's "separation" – her

23

reduced hours – was not **required** by the relevant statute. As such, the chargeback protection does not kick in for the ARB.

The ARB argues that Hall's reduced hours were required by what it calls the Tax Code's "immalleable [*sic*] deadlines." Appellant's Br. at 51. In essence, the ARB argues that the statutory scheme that sets up the schedule for appraisal tax reviews "required" the reduction in Hall's hours. Specifically, the ARB contends that its operations, as governed by the Texas Tax Code, necessitate fluctuating workloads, with a peak season from May to October and a reduced workload from November to April. Appellant's Br. 52–57. The ARB asserts that this cyclical, seasonal nature of employment is entirely dictated by statute, absolving it from chargeback liability under Section 204.022(a)(2) of the Tax Code. But once again, the ARB stretches a statutory scheme to the limit to create an exception for itself.

### a. *Retama* governs this issue.

TWC agrees with Appellant that the sole case on point for this chargeback issue is *Retama Dev. Corp. v. Tex. Workforce Comm'n*, 971 S.W.2d 136 (Tex. App.—Austin 1998, no pet.). However, *Retama* is in fact directly applicable to this case, despite Appellant's assertions to the contrary.

In *Retama*, Retama Park, a horse racetrack park, laid off a security guard after the Texas Racing Commission approved Retama Park's request to end a racing season early following an economic downturn. *Retama*, 971 S.W.2d at 138. Retama Park argued that horse racing was such a highly regulated industry that every act was done pursuant to statute, and that acts done pursuant to that statutory authority, such as firing the security guard, were "required by statute." *Id.* at 138–39. The First Court of Appeals in *Retama*

24

rejected this line of reasoning, holding that not every act done pursuant to statutory authority qualifies for chargeback protection. *Id.* at 139.

The First Court in *Retama* noted that the language of Section 204.022 is unambiguous and applies only if an employee's termination was required by a statute of the state, and it does not apply if an employee's termination only "indirectly" accompanies statutorily required regulation. *Id.*

### b. Hall's partial separation from employment was not required by the relevant statute – Section 6.41 of the Tax Code.

The First Court in *Retama* noted that while a statute required the Racing Commission's approval for the early termination of the racing season, no specific statute addressed the termination of racetrack employees. *Id.*

Here, the specific statute at issue that addresses the termination or separation of ARB members is Section 6.41 of the Tax Code. Section 6.41 states that appointed members of the Board hold office for two years beginning January 1. Tex. Tax Code § 6.41(e).[7]

Section 204.022 of the Labor Code provides chargeback protection if the separation was required by statute. But the relevant statutes here do not apply. Hall served her two-year term as required by Tax Code Section 6.41, and not more. She did not apply for unemployment benefits for a period *after* her term expired, in which case her separation would have been required by statute, and the ARB would have been protected from chargeback.

---

[7] Section 6.41 of the Tax Code also provides a mechanism for removing a Board member before his or her term ends for certain types of misconduct. Hall was not accused of any kind of misconduct and served the entirety of her term. *See* Tex. Tax Code § 6.41(f).

25

Instead, Hall applied for unemployment benefits while she was still serving her term. This is not a scenario covered by the Tax Code.

### c. Hall's partial separation from employment at best indirectly accompanied other statutes unrelated to employee separation.

Since the ARB cannot point to the actual statute that addresses the separation of ARB members, they instead point to various sections of the Tax Code that generally govern the duties of an appraisal review board, and some deadlines that an appraisal review board must meet every year. These statutes govern dates by which the county chief appraiser must deliver written notice to property owners of their property's appraised value, dates by which the chief appraiser must submit completed appraisal records to the appraisal review board, dates by which property owners must file a protect with the appraisal review board, and dates by which the appraisal review board must hear all or substantially all determine timely filed protests and challenges. *See generally* Tex. Tax Code §§ 25.19, 25.22(a), 41.12, 41.44.

The TWC does not dispute that the Tax Code creates a detailed scheme for how appraisal review boards operate. The TWC does not dispute that the Tax Code creates specific deadlines that must be complied with by appraisal review boards, deadlines that assuredly form a calendar of sorts. The TWC does not dispute that the ARB cannot alter these deadlines. Nor does the TWC dispute ARB's assertion that these deadlines create a "seasonal" character to work for the ARB, with a busy season and slow season.[8]

---

[8] Indeed, Hall herself testified she was aware of the seasonal nature of her work with the ARB. RR 53:5-7.

However, none of these statutes address the separation or termination of ARB members. No specific Tax Code provision addresses reduction in hours for ARB members. While these statutes influence the timing of ARB activities, they do not *require* reductions in employee hours or employment termination. At best, Hall's partial separation - in the form of her reduced hours – were an ***indirect result*** of these statutes.

Importantly, none of these statutes address how individual appraisal review boards must assign specific Board members to receive certain assignments, or how many assignments they receive. Instead, testimony from the ARB during trial stated that Board members are given individual assignments at first generated by a computer, and then adjusted by the ARB to ensure that panels are balanced by experience levels. RR.46:19–47:8. The ARB exercises at least some discretion on how assignments are doled out to individual Board members. RR.47:9–13.

Every decision the ARB made concerning Hall's schedule – and her reduced hours – was at most an indirect result of deadlines set up by the Tax Code. The Tax Code *requires* appraisal review boards to meet certain deadlines. That is all. The Tax Code does not govern how appraisal review boards give out assignments to individual Board members. This is exactly the kind of scenario laid out by *Retama* – where an employee undergoes a separation from employment due to the indirect results of statute.

Appellant portrays itself at the mercy of the Tax Code for almost all its decisions, including the reduction in Hall's hours. This is an illusion of surrender. Hall's reduction in hours was not an act required by any specific statute of the Tax Code. At best, Hall's reduction in hours was an indirect

27

result of statutes that govern appraisal review board deadlines generally. Thus, the Board's attempt to invoke Texas Labor Code § 204.022(a)(2) for chargeback protection is unfounded, and this Court should reject Plaintiff's argument regarding chargeback protection.

## VI. This Court is not bound by the trial court's findings of fact and conclusions of law.

Appellant argues that this Court should defer to the trial court's finding of fact and conclusions of law to the extent they conflict with the court's judgment in favor of TWC. Appellant's Br. 27–28.

However, the sole question before the Court is whether substantial evidence supports the Commission's decision; the question regarding Hall's eligibility for unemployment benefits is strictly one of law. *See Brinkmeyer*, 662 S.W.2d at 956. Because the only question before the Court is one of law, the filing of findings of fact was unnecessary. *Texas Employment Comm'n v. Lewis*, 777 S.W.2d 817, 822 (Tex. App.—Fort Worth 1989, no writ); *Madisonville Consol. Indep. Sch. Dist. v. Texas Employment Comm'n*, 821 S.W.2d 310, 314 (Tex. App.—Corpus Christi 1991, writ denied). In any event, Appellee does not contest the findings of fact – none of the findings of fact signed by the trial court conflict with the TWC decision finding Hall eligible for unemployment benefits, and substantial evidence supports the TWC decision with the submitted findings of fact to the trial court.[9]

---

[9] Indeed, at the trial court, both parties agreed there were no disputed issues of fact. Counsel for Appellee stated that "There aren't really any factual disputes here at all." RR.15:16-17.

However, this Court is not bound by the trial court's signed conclusions of law. Legal conclusions of the trial court are always reviewable and the appellate court is not obligated to give any particular deference to those conclusions. *Pegasus Energy Grp. v. Cheyenne Pet. Co.*, 3 S.W.3d 112, 121 (Tex. App.—Corpus Christi 1999, pet. denied); *Montanaro v. Montanaro*, 946 S.W.2d 428, 431 (Tex. App.—Corpus Christi 1997, no writ). The standard of review appellate courts apply to review conclusions of law is *de novo. Hegar v. American Multi-Cinema, Inc.*, 605 S.W.3d 35, 40 (Tex. 2020); *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996). As the final arbiter of the law, the appellate court has the power and the duty to evaluate independently the legal determinations of the trial court. *Sears, Roebuck & Co. v. Nichols,* 819 S.W.2d 900, 903 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 10 (Tex. App.—Dallas 1988, writ denied).

This Court is not bound by the trial court's conclusions of law. To the extent that any of the trial court's conclusions of law conflict with the trial court's judgment, this court should not be bound by any such conflict and should come to its own reasoned conclusions regarding this case.

## Conclusion and Prayer

The Legislature delegated to the TWC the primary responsibility of determining unemployment benefit eligibility and purposefully designed the substantial evidence *de novo* standard of review to ensure that the TWC has significant deference in adjudicating unemployment benefit disputes. While a court may hold the TWC accountable if it disregards the law or the facts, it is not allowed to substitute its judgment for that of the TWC.

The TWC did not make a decision contrary to law in this case. It did not make a factual finding contrary to the evidence presented. It properly weighed the conflicting evidence and made a reasonable decision. Although the ARB might disagree with the decision, it was neither arbitrary nor capricious. The TWC decision was supported by substantial evidence and the trial court properly affirmed the decision.

The ARB performs an important duty in the State of Texas in reviewing the appraisals of property owners. And as the Supreme Court held in *Harris County Appraisal District*, its members are entitled to unemployment benefits for this work, even on a partial basis. This Court should not allow the ARB to contort the Labor and Tax Codes to create a scheme which would render ARB members from receiving unemployment benefits. Neither should this Court accept an interpretation of the Labor Code that would protect the ARB from chargeback due to indirect knock-on effects of a schedule.

TWC respectfully requests this Court affirm the trial court's judgment and render judgment affirming the TWC decision.

Respectfully submitted.

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

AUSTIN KINGHORN
Deputy Attorney General for
Civil Litigation

STEVEN ROBINSON
Division Chief, Tax Division

*/s/ William Cohen*
WILLIAM COHEN
Assistant Attorney General
State Bar No. 24082839
Tax Litigation Division MC 029
P.O. Box 12548
Austin, Texas 78711–2548
512–475–2940
512–478–4013 (fax)
Will.Cohen@oag.texas.gov
***Attorney for Appellant Texas
Workforce Commission***

## Certificate of Compliance

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in conventional typeface no smaller than 14–point for text and 12–point for footnotes. This document also complies with the word–count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 7,628 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

*/s/ Willliam Cohen*
WILLIAM COHEN
Assistant Attorney General

## Certificate of Service

I certify that a copy of this Appellee Texas Workforce Commission's Brief was served by email and/or e–service on November 21, 2025, as shown below:

**Via E-Service**
Ramon G. Viada III
VIADA & STRAYER
rayviada@viadastrayer.com
17 Swallow Trail Court
The Woodlands, Texas 77381
*Attorney for Appellant*

Redona Hall
redona@att.net
4263 Northvale Drive
Houston, Texas 77014-1132
*Co-Appellee*

*/s/ William Cohen*
WILLIAM COHEN
Assistant Attorney General

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lynee Pearson on behalf of William Cohen
Bar No. 24082839
lynee.pearson@oag.texas.gov
Envelope ID: 108353290
Filing Code Description: Other Brief
Filing Description: 20251121 Appellee TWCs Brief on the Merits
Status as of 11/21/2025 4:05 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jennifer Holloway | | jholloway@viadastrayer.com | 11/21/2025 3:54:32 PM | SENT |
| Ramon G.Viada | | rayviada@viadastrayer.com | 11/21/2025 3:54:32 PM | SENT |
| Valerie Locher | | vlocher@viadastrayer.com | 11/21/2025 3:54:32 PM | SENT |

Associated Case Party: Texas Workforce Commission

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| William Cohen | 24082839 | Will.Cohen@oag.texas.gov | 11/21/2025 3:54:32 PM | SENT |

Associated Case Party: RedonaHall

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Redona Hall | | redona@att.net | 11/21/2025 3:54:32 PM | SENT |